## WHITE et al. v. STATE ex rel.

No. 12389—Opinion Filed Nov. 27, 1923.

1. **Banks and Banking — Depositors' Guaranty Fund — Liquidation of Assets of Failed Bank—Scope.**

Under the statutes of Oklahoma relating to the depositors' guaranty fund, the Bank Commissioner took possession of a failed bank for the purpose of liquidating its assets and winding up its affairs. Out of such assets he caused all depositors of such failed bank to be paid in full. Held, that such Bank Commissioner had authority, and it was his duty in winding up the affairs of such failed bank, to liquidate the remaining assets for the purpose of paying other creditors of such failed bank.

2. **Limitation of Actions — Notes Held by State Bank Commissioner.**

The statute of limitations does not run against the state in an action on a promissory note held by the State Bank Commissioner as the assets of an insolvent bank.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

Action by the State of Oklahoma ex rel. Attorney General against W. S. White and Sophia McGuire White on promissory notes.

Judgment for plaintiff, and defendants bring error. Affirmed.

Leahy & Brewster, for plaintiffs in error.

Harlow A. Leekley, for defendant in error.

Opinion by ESTES, C. This action was brought in the district court of Muskogee county by the state of Oklahoma, on relation of the Attorney General, defendant in error, as plaintiff, against W. S. White and Sophia McGuire White, plaintiffs in error, as defendants, on one promissory note for $1,000, and another for $600. Said notes were executed and delivered by defendants to the Union State Bank of Muskogee on June 5 and April 15, 1912, and due a few days thereafter, respectively. On September 15, 1913, the Bank Commissioner of Oklahoma adjudged said bank to be in an insolvent and failing condition, took charge of same and its assets, and proceeded to wind up its affairs. Two days after taking charge of said bank, the commissioner entered into an agreement with the American National Bank of Muskogee, the purpose of which was to provide means for immediate payment to the depositors of said failed bank. By the terms of said agreement, said American National Bank purchased a part of the assets of said Union State Bank, in consideration whereof said American National Bank agreed to pay and did pay the individual and commercial depositors of said failed bank. Said contract provided that said American National Bank should recoup itself out of such assets for paying such depositors and return the residue of said assets to the Bank Commissioner. Accordingly it was so done. The notes in controversy were among the assets so delivered to said American National Bank, but not collected by it, and by it returned to the commissioner. The evidence clearly shows—in fact, it was admitted by the defendants in their testimony—that defendants executed and delivered said notes to said Union State Bank in order to procure cash for the personal use of one Collins, president of said bank, and that such president did use such funds for his private business in the construction of houses. At that time, Mrs. White was guardian of her minor son, and as such guardian had funds in said bank. The defendants and Collins intended to procure a loan through the probate court of the funds of such guardian on the property of said Collins. It was contemplated that thereby the notes in controversy should be liquidated by said Collins. However, only $750 was thus realized, and that amount was paid by defendants to Collins. Unfortunately for defendants, said Collins did not apply said $750 as a payment on said notes

of defendants then due to said bank. The defenses set up by defendants hereinafter appear. On verdict of jury, judgment was rendered for plaintiff against defendants for $3,275, which included interest for many years. Defendants appeal. The errors assigned by defendants require but brief notice.

Defendants contend that there was no competent testimony showing that the Union State Bank ever failed or ever was taken in charge by the commissioner. The contract referred to above, between the Bank Commissioner and the American National Bank, makes elaborate provisions for winding up the affairs of said bank and shows that said commissioner had taken same over with its assets. This contract was admitted in evidence without objection on the part of counsel for defendants, and, in fact, at his suggestion. The evidence of other witnesses shows that the said commisioner in fact took charge of said Union State Bank as alleged. Defendants next contend that the notes in controversy were owned by the American National Bank and that plaintiff was not the real party in interest. When the notes in controversy were turned over to the American National Bank under said contract, the indorsee's name was imperfectly written thereon, and endorser was the Union State Bank by its president and without recourse. This constituted a qualified indorsement and passed the title to said notes to said American National Bank. When this suit was brought on said notes by the agent of the commissioner, he did not strike out said qualified indorsement as he could and should have done.

Section 7718, Compiled Oklahoma Statutes 1921, provides that the holder may, at any time, strike out any indorsement which is not necessary to his title. However, the said written contract between said commissioner and said American National Bank provided that the latter should surrender to the former all the remaining assets in its possession, of the said Union State Bank, for the benefit of other creditors. The evidence shows that the notes in controversy were, in fact, surrendered or returned to the Bank Commissioner under said written contract. The said written contract and the other evidence were ample to show title to said notes in the commissioner at the time this suit was filed. Under said contract with the American National Bank all depositors were paid in full and the depositors' guaranty fund was fully reimbursed and kept intact. Defendants contend that, because thereof, the state has no interest in said notes. The statutes provide that the commissioner shall "wind up" the affairs

of a failed bank on taking it over. The term "wind up" has been construed by this court to embrace the entire process of settling the accounts and liquidating the assets of failed banks for the purpose of distribution among creditors and dissolving the corporation. State ex rel. Short v. Norman, 86 Okla. 36, 206 Pac. 522. The statutes also provide that in the process of winding up such bank, the debts of such bank shall be paid. This must mean all debts. In the instant case, the evidence shows that there were debts of the Union State Bank other than those of the depositors.

It is contended that the said notes show on their face that the action is barred by the five-year statute of limitations Said notes became due in 1912. They were taken as part of the assets of said failing bank in 1913. The suit herein was filed in 1919. The statute of limitations does not run against the state in an action on promissory notes held by the said Bank Commissioner as the assets of an insolvent bank. State ex rel. Freeling, Atty. Gen., v. Smith et al., 77 Okla. 277, 188 Pac. 96; State ex rel. Walcott, Bank Com'r, v. City National Bank of Commerce, 88 Okla. 154, 212 Pac. 321; State ex rel. Atty. Gen. v. Ware, 82 Okla. 130, 198 Pac. 859. Defendants urged the foregoing contentions under their assignment that the court erred in overruling their demurrer to the evidence of the plaintiff. None of such contentions are tenable.

Defendants next complain that the court erred in refusing to give their certain requested instructions. In this the court did not err. It is doubtful, under this record, whether there was any question of fact to be submitted to the jury. However, the court did submit the only possible question—whether the said $750, paid by defendants to said Collins, was made to him as president of the Union State Bank, with instructions to apply same on said notes or paid to him as a personal loan. This was done under a proper instruction. The court also clearly covered the question whether credit should be given defendants for said $750 in a proper instruction.

There being no error, the judgment of the district court should be and is affirmed.

By the Court: It is so ordered.