(Nos. 23966 to 23970 incl.—

ANITA McCORMICK BLAINE, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed April 16, 1937—Rehearing denied June 2, 1937.*

HERRICK, C. J., and SHAW and WILSON, JJ., dissenting.

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, ARTHUR A. SULLIVAN, and J. HERZL SEGAL, of counsel,) for appellant.

GEORGE A. MASON, (ANGUS ROY SHANNON, HOWARD F. BISHOP, and GEORGE A. MASON, JR., of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

Separate appeals have been taken from five judgments entered in assumpsit actions in the superior court of Cook county to recover interest on judgments of condemnation. The original actions were instituted by property owners whose property had been condemned under the Local Improvement act in order to widen certain streets in Chicago. In each of these cases judgments for varying amounts of interest on the several judgments were entered in favor of the property owners and against the city of Chicago, appellant here. The five cases have been consolidated and the case of Anita McCormick Blaine selected for review. Certain constitutional questions were raised in the trial court and are presented by the record.

The argument running as a central theme throughout appellant's briefs is that no interest can be allowed on judgments of condemnation under the Local Improvement act until the condemnor actually takes physical possession of the property. In support of this thesis, several decisions of this court have been cited, including *City of Chicago* v. *Barbian*, 80 Ill. 482; *South Park Comrs.* v. *Dunlevy*, 91 id. 49, and *Mecartney* v. *City of Chicago*, 273 id. 276. We carefully considered and showed the inapplicability of these three cases, with many others, in answer to the identical argument of counsel for same appellant in the recent case of *Feldman* v. *City of Chicago*, 363 Ill. 247, where we cited decisions of this court as early as 1871, (*Cook* v. *South Park Comrs.* 61 Ill. 115,) holding that the finality of the judgment—not the date of possession—has been recognized as the determining factor. On this point in the *Feldman case* we further said: "No dispute could arise between the city and the property owner as to the amount to be paid,

after the judgment became final and unconditional. The land was then presumed to have been taken for public use. Thenceforth the city could not escape payment of the judgment, regardless of when it took actual possession of the property condemned. (*City of Chicago* v. *McCluer,* 339 Ill. 610.)" With reference to this same argument in the comparatively recent case of *Turk* v. *City of Chicago,* 352 Ill. 171, we held: "The judgment was final and unconditional. It bears no element not found in any *quod recuperet* judgment entered against a municipality. By that judgment appellant owned the property condemned and all rights pertaining thereto, including the right to take possession. The appellee by that judgment came into an unconditional right to the compensation awarded. What appellant did, after the date of the judgment, concerning possession of the property was a matter solely within its choosing. There is no authority in law for saying that it could enforce a tenancy on appellee without his agreement thereto, at a rental in the amount of the interest then accruing on the judgment or in any amount." These recent decisions in the *Feldman* and *Turk cases,* put at rest most of the points raised in the case at bar. Each of these cases contained an exhaustive review of prior decisions holding that the recovery of interest in proceedings to secure compensation for lands taken or damaged for public use depended upon the judgment, rather than the date of possession. (*Cook* v. *South Park Comrs. supra; Illinois and St. Louis Railroad Co.* v. *McClintock,* 68 Ill. 296; *City of Chicago* v. *Palmer,* 93 id. 125; *Beveridge* v. *West Chicago Park Comrs.* 100 id. 75; *Epling* v. *Dickson,* 170 id. 329.) The contested point of law raised and settled in these seven decisions, ranging from 1871 to 1936, has become established precedent in this State, and is adhered to under the doctrine of *stare decisis.*

As a constitutional point not raised in any previous case, appellant now argues that the imposition of additional com-

pensation in the form of interest is violative of section 13 of article 2 of the constitution of 1870, which establishes a jury as the exclusive tribunal to ascertain just compensation in condemnation proceedings. It is urged that a court cannot encroach upon the powers of a condemnation jury and that likewise the legislature, by passing an interest statute, cannot invade the jury's sphere of action, so as to authorize a court to increase an award made by a jury in condemnation proceedings. It is .appellant's theory that if any delay occurs in the payment of a condemnation judgment, any damages thereby suffered by a property owner must be ascertained by a jury, after possession has been taken. This line of argument is ingenious, but finds its answer in the same section and article of the constitution relied upon for its support. The entry of a condemnation judgment on the verdict of a jury marks the end of the judicial inquiry required by section 13 of article 2 of the constitution. The constitutional requirement is then fully satisfied. The judgment or award in condemnation proceedings is always fixed in terms of money. This judgment, once made, does not differ in effect from any other judgment. It is commonly recognized in all jurisdictions that when a final money judgment is not promptly paid, a loss is thereby suffered by the party entitled to its benefit. A common remedy has, therefore, been provided by the legislature as fair compensation for this delay in payment. It is found in the Interest act. The amount computed under the Interest act is to be paid for withholding payment of condemnation judgments. In this view of the case, the legislature and the judiciary have not violated any constitutional provisions, but have coöperated in securing to the property owner the just amount to which he is entitled. Interest on the judgment cannot be considered a part of the value of the property as determined by the jury.

In the case at bar, a condemnation judgment for $168,404 was entered against appellant on August 7, 1924. On

October 9, 1925, this amount, without interest, was paid to the property owner, and accepted without prejudice to her right to recover interest. During the course of the condemnation proceedings the parties entered into a stipulation of facts which provided, in part, that the property owner preserved the right "to take such steps * * * necessary to recover interest on the judgment from the date of entry thereof." Under this stipulation, it is apparent that the amount paid by the city was to be entirely applied to pay the principal of the judgment. The trial court entered judgment for interest at five per cent on $168,404 from July 16, 1924, to March 27, 1925, in the sum of $5870.62 and then again computed the interest upon interest until July 15, 1936, at an additional sum of $3316.88, making an aggregate sum of $9187.50. This method of computation, under the stipulation, was wrong. The correct amount of interest due is five per cent on $168,404 from August 7, 1924, to October 9, 1925.

The judgment is in all respects affirmed except as to computation of interest due, and is reversed and remanded as to this last mentioned item, with directions to correctly compute and enter judgment for the interest from the date of final judgment until the date of its payment.

What we have said in this case applies with equal effect to the companion cases, numbered 23967, 23968, 23969 and 23970; in each of said cases the interest shall be computed and judgments respectively entered for the amounts due from the dates of final judgments to the dates of actual payment thereof.

*Judgments affirmed in part, reversed in part and remanded, with directions.*

HERRICK, C. J., and SHAW and WILSON, JJ., dissenting.